UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | No. 1:21–CV–0832–DAE |
| Plaintiff, | § § § | |
| vs. | § § | |
| LEENA JAITLEY, D/B/A MANAGED OPTIONS TRADING and OPTIONS BY PROS, | § § § § § | |
| Defendant, and | § § § | |
| TARABEN PATEL and OTA, LLC, | § § § | |
| Relief Defendants. | § | |

ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is a Report and Recommendation ("Recommendation") filed by Magistrate Judge Mark Lane. (Dkt. # 69.) Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a hearing. After reviewing the Recommendation and the information contained in the record, the Court **ADOPTS** the Recommendation.

BACKGROUND

On September 20, 2021, Plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC") filed this suit against Defendant Leena Jaitley

1

("Defendant" or "Jaitley"), and Relief Defendants Taraben Patel and OTA LLC. (Dkt. # 1.)  The SEC alleged that Jaitley ran a stock options trading scheme and defrauded clients.  The SEC asserted four causes of action against Jaitley: (1) violations of the Antifraud Provisions of the Securities Act Section 17(a) or 15 U.S.C. § 77q(a); (2) violations of Antifraud Provisions of the Exchange Act Section 10(b) or 15 U.S.C. § 78j(b)] and Rule 10b-5 or 17 C.F.R. § 240.10b-5; (3) violations of the Antifraud Provisions of the Advisers Act Section 206(1) or 15 U.S.C. § 80b-6(1); and (4) violations of the Antifraud Provisions of the Advisers Act Section 206(2) or 15 U.S.C. § 80b-6(2).  The SEC asserted one cause of action—a claim for equitable relief—against the Relief Defendants.  The SEC sought (i) permanent injunctive relief; (ii) disgorgement of allegedly ill-gotten gains; (iii) accrued prejudgment interest on those gains; and (iv) civil monetary penalties.

On March 7, 2023, the SEC moved for partial summary judgment, specifically as to liability on the four securities fraud claims.  (Dkt. # 50 at 1, 8.)  Jaitley opposed the SEC's Motion.  (Dkt. # 56.)  On March 7, 2023, OTA LLC ("OTA") filed a Motion to Set Aside Clerk's Entry of Default.  (Dkt. # 52.)  The SEC opposed OTA's Motion on March 21, 2023.  (Dkt. # 55.)

The Motion for Partial Summary Judgement was referred to Judge Lane on May 11, 2023.  The Motion to Set Aside Clerk's Entry of Default was

referred to Judge Lane on April 3, 2023. Judge Lane issued his Report and Recommendation regarding both Motions on November 13, 2023. (Dkt. # 69.) None of the parties filed objections.

## DISCUSSION

Where, as here, none of the parties objected to the Magistrate Judge's findings, the Court reviews the Report for clear error. United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989). After careful consideration, the Court adopts the Magistrate Judge's Report.

I.      Summary Judgment

First, the Court finds that the Magistrate Judge Lane's Summary Judgement Analysis is reasonable and absent of clear error.

Summary judgment is appropriate only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). There is only a dispute of material fact if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

The movant bears the initial burden of identifying the portions of the record "which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party

must then establish the existence of a genuine issue of material fact to survive a motion for summary judgment and proceed to trial.  Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986).  In reviewing motions for summary judgment, the Court will view the evidence presented in the light most favorable to the non-movant.  Griffin v. United Parcel Serv., Inc., 661 F.3d 216, 221 (5th Cir. 2011).

    A.  Antifraud Provisions

The SEC brings two causes of action under Section 17 of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 249.10b-5.  A defendant violates these "Antifraud Provisions" if the SEC establishes by a preponderance of the evidence that: (1) the defendant made a material misrepresentation or omission of material fact or employed a fraudulent scheme or engaged in an act that operated as a fraud; (2) the defendant acted with the required mental state; (3) in connection with the purchase, offer, or sale of any security; and (4) the defendant used or caused the use of interstate commerce.  SEC v. Gann, 565 F.3d 932, 936 (5th Cir. 2009).  Section 17(a)(2) additionally requires finding that the defendant "obtain[ed] money or property" by means of a false or misleading statement.  15 U.S.C. § 77q(a)(2).

It is appropriate to analyze these Antifraud Provisions together

because "the proscriptions of [S]ection 17(a) are substantially the same as those of [S]ection 10(b) and [R]ule 10b-5." SEC v. Helms, No. A-13-CV-01036 ML, 2015 U.S. Dist. LEXIS 110758, at *38 (W.D. Tex. 2015) (quoting SEC v. Spence & Green Chem. Co., 612 F.2d 896, 903 (5th Cir. 1980.)  The Court analyzes each element in turn.

        1.  Material Misrepresentation

Materiality may be "resolved as a matter of law by summary judgment" when information is "so obviously important to an investor that reasonable mind cannot differ on the question of materiality." TSC Industry, Inc. v. Northway, Inc., 426 U.S. 438, 405 (1976); Basic Inc. v. Levinson, 485 U.S. 224, 232 (1988) (adopting the TSC Industries standard of materiality for the § 10(b) and Rule 10b-5 context).  In the Fifth Circuit, "a reasonable investor would have wanted to know the true identity of who was leading a company." SEC v. Blackburn, 15 F.4th 676, 680 (5th Cir. 2021) (affirming summary judgment).

      The SEC presented evidence that Jaitley made misrepresentations of information that is obviously important to investors, including the identity of who was running the operation in question.  Investors also reported being duped by Jaitley's misrepresentations.  The SEC has thus established that Jaitley made material misrepresentations as a matter of law.  The first element of a violation of Section 17 and Rule 10b-5 is established.

2. <u>Mental State</u>

Violations of Section 17(a)(1), Section 10(b), and Rule 10b-5 require a showing of scienter, a mental state embracing the intent to deceive, manipulate, or defraud.  <u>Ernst & Ernst v.</u> <u>Hochfelder</u>, 425 U.S. 185, 193 n.12 (1976).  "To prove scienter, the SEC need only prove that the defendant acted with severe recklessness."  <u>SEC v. Sethi</u>, 910 F.3d 198, 206 (5th Cir. 2018) (citing <u>Broad v. Rockwell Int'l Corp.</u>, 642 F.2d 929, 961 (5th Cir. 1981).  "Severe recklessness is defined as 'those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'" <u>Id.</u>

"[A]ttempts to avoid detection of 'are characteristic of a scheme to defraud.'"  <u>SEC v. Farias</u>, No. SA-20-CV-00885-XR, 2022 U.S. Dist. LEXIS 135868, at *13 (W.D. Tex. 2022) (quote omitted).  Additionally, a repeated invocation of the Fifth Amendment right against self-incrimination during a deposition strongly supports a finding of scienter.  <u>SEC v. Silea</u>, No. 4:20-CV-737-SDJ, 2022 U.S. Dist. LEXIS 15101, at *32 (E.D. Tex. 2022); <u>Farace v. Indep. Fire Ins.</u>, 699 F.2d 204, 210 (5th Cir. 1983) (finding "while a person may refuse to

testify during civil proceedings on the ground that his testimony might incriminate him . . . refusal to testify may be used against him in a civil proceeding").

The SEC presented ample evidence that Jaitley acted with scienter. Despite knowing that neither she nor Mr. Patel had decades of financial services experience at Goldman Sachs, she made such a representation. Jaitley similarly knew OBP/MOT did not use any proprietary trading techniques, nor did the company employ numerous traders. The company was not even located in New York, a claim Jaitley also made. And Jaitley's use of fake names and blocked phone numbers underscores that Jaitley intended to deceive investors.

As a result, the Court agrees with Judge Lane's conclusion that there is no genuine dispute that Jaitley acted with scienter.

Violations of Sections 17(a)(2) and (a)(3) require the SEC to establish the defendant's negligence, a lesser standard than the scienter required under Section 17(a)(1). SEC v. Life Partners Holdings, Inc., 854 F.3d 765, 786 (5th Cir. 2017); SEC v. Stack, No. 1:21-CV-00051-LY, 2021 U.S. Dist. LEXIS 196878, at *17 (W.D. Tex. 2021). Therefore, as noted by the Northern District of Texas, a showing of scienter will also satisfy the lesser burden of negligence required for Sections 17(a)(2) and (a)(3). SEC v. Sneed, Civil Action No. 3:20-CV-2988-S-BH, 2021 U.S. Dist. LEXIS 179239, at *28 (N.D. Tex. 2021).

Because there is no genuine dispute about Jaitley's scienter, the Court

agrees with Judge Lane that the SEC has necessarily met the lesser burden of establishing negligence and the second element of a Section 17 and Rule 10b-5 violation is met.

### 3. Connection with the Purchase, Offer, or Sale of Any Security

Misrepresentations satisfy the element of being "'in connection with' the purchase or sale of securities if there is a relationship in which the fraud and the stock sale coincide or are more than tangentially related . . . ." to real or purported transactions in covered securities. Roland v. Green, 675 F.3d503, 511 (5th Cir. 2012) (emphasis in original) (quoting Madden v. Cowen & Co., 576 F.3d 957, 966 (9th Cir. 2009)) (citing Kircher v. Putnam Funds Tr., 547 U.S. 633, 644 (2006)).

Client 1's declaration and brokerage statement reflects securities transactions entered into by OBM/MOT. (Dkt. # 50 at 32.) The SEC presents this evidence in the record as proof that Jaitley's conduct directly resulted in investors trusting her with the funds in their brokerage accounts and that Jaitley subsequently used those funds to transact in securities. The Court agrees with Judge Lane's finding that this evidence is sufficient to establish that Jaitley's misrepresentations were in connection with the purchase of securities. As there is no genuine dispute as to a material fact as to this element, the SEC has sufficiently established the third element of a Section 17 and Rule 10b-5 claim.

4. Use of Interstate Commerce

Interstate commerce can be established by a defendant using "emails, phone calls, and wire transfers, to communicate with investors." SEC v. Helms, No. A-13-CV-01036 ML, 2015 U.S. Dist. LEXIS 110758, at *39 (W.D. Tex. 2015). The SEC demonstrates emails from Jaitley to investors requesting bank wires and a bank wire record as evidence for this element. (Dkt. # 50 at 33.) Because Jaitley used email to communicate with investors and bank wires to transfer funds, the fourth element is established. (Id.)

5. Obtained Money or Property

A plaintiff must additionally prove that a defendant "obtain[ed] money or property" because of their misrepresentation to establish a Section 17(a)(2) claim. 15 U.S.C. § 77q(a)(2). The SEC points to agreements between OBP/MOT and Client 1 and declarations of Clients 1, 2, 3, and 4 regarding charging fees and payment of fees as evidence in the record that Jaitley did obtain money from Clients by charging them account opening fees, management fees, and a percentage of profits. (Dkt. # 50 at 33.) The Court agrees with Judge Lane's determination that this evidence proves there is no dispute of material fact as to this element. The SEC has established the fifth element required for a Section 17(a)(2) claim.

> 6. The SEC has Established there is No Genuine Dispute as to Any Material Fact for its Antifraud Claims

Here, the Court agrees with Judge Lane that the SEC has met its burden and demonstrated that there is no genuine dispute as to any material facts of the four elements of its Section 17(a)(1) and (3) claims and Rule 10b-5(a), (b) and (c) claims or to any material facts of the five elements of its Section 17(a)(2) claim. (Dkt. #69 at 7–17.)

B. Section 206 Claims

"[C]onduct falling within § 17(a)(1) and (3) will fall within the analogous provisions of §206 when committed by an investment adviser against a client or prospective client." SEC v. Seghers, 298 Fed. Appx. 319, 327–28 (5th Cir. 2008) (citing Steadman v. SEC, 603 F.2d 1126, 1134 (5th Cir.1979)). "Scienter is required to show a violation of §206(1)" and "negligence is sufficient to show a violation of §206(2)." Steadman, 603 F.2d at 1134. "Facts supporting a Securities Act Section 17(a) or an Exchange Act Section 10(b) violation by an investment adviser will also support a showing of a Section 206 violation under the Advisers Act." Dembski v. SEC, 726 F. App'x 841, 844 (2d Cir. 2018).

Having established the first four elements of a Section 206 violation, the only additional element that needs be proved is that the defendant's conduct occurred while the defendant was acting as an investment adviser for a client. See id. An investment adviser is "any person who, for compensation, engages in the

10

business of advising others, . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11). A defendant who manages client funds and are compensated by a salary or a percentage of the related profits are "investment advisers" within the meaning of the statute. See SEC v. Haarman, 2022 WL 2782648, at *3 (W.D. Tex. Jan. 25, 2022) (collecting cases).

        The Court agrees with Judge Lane that "[a]t bottom, the resolution of the Motion is straightforward." (Dkt. # 69 at 19.) The SEC clearly identified evidence in the record that Jaitley managed client funds through OBP/MOT and gained fees for her management. (Dkt. # 50 at 35.) This evidence included fee arrangements between clients and OBP/MOT that referenced Jaitley's commission on profits for her fund management. (Id.) The SEC carried its summary judgement burden, identifying evidence supporting summary judgment on each element of the alleged violations of Section 206(1) and Section 206(2). Jaitley has not carried her burden. The Court therefore grants summary judgment for the SEC on its Section 206 claims.

  C. <u>Summary Judgement Conclusion</u>

        The Court determines that Judge Lane's conclusions and recommendations are neither clearly erroneous nor contrary to law. The Court

adopts Judge Lane's recommendation and grants SEC's Motion for Partial Summary Judgement. (Dkt. # 50.)

II. <u>Set Aside Clerk's Entry of Default</u>

The Court finds Magistrate Judge Lane's Default Set Aside Analysis to be reasonable and absent of any clear error.

Under Rule 55, a district court "may set aside an entry of default for good cause." Fed. R. Civ. Pro. 55(c). "The language of this rule is discretionary, and 'the decision to set aside a default is committed to the sound discretion of the trial court.'" <u>Moreno v. Lg Elecs., USA</u>, 800 F.3d 692, 698 (5th Cir. 2015) (quoting <u>In re Dierschke</u>, 975 F.2d 181, 183 (5th Cir. 1992)). District courts should grant motions to set aside a default unless the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense. Dierschke, 975 F.2d at 183–84.

As Judge Lane pointed out, the weight of the non-exclusive discretionary factors in this analysis is "somewhat of a close call," due to OTA's failure to vigorously defend this action. (Dkt. # 69 at 21.) The Court nevertheless agrees with Judge Lane that the factors do weigh "ever so slightly in OTA's favor." (Dkt. # 69 at 22.) OTA did defend this action, and OTA's counsel declared under penalty of perjury that she and Jaitley contacted "dozens of attorneys to represent [] OTA" and were not able to secure representation. (Dkt. #

12

52-1.) OTA's counsel further presents that the SEC's prior counsel agreed not to oppose OTA's motion to set aside the default judgment. (Id.) As a result, this Court agrees with Judge Lane's assessment that OTA's default was not willful. The SEC may seek other remedies and does not face undue prejudice. However, OTA would face severe prejudice if the default judgment is not set aside in light of OTA's previous inability to secure counsel.

The Court determines that Judge Lane's conclusions and recommendations are neither clearly erroneous nor contrary to law. The Court grants OTA's Motion to Set Aside Clerk's Entry of Default (Dkt. # 52) and orders the Clerk's Entry of Default (Dkt. # 24) to be vacated.

CONCLUSION

For the reasons given, the Court **ADOPTS** Magistrate Judge Mark Lane's Report and Recommendation (Dkt. # 69) as the opinion of the Court and **GRANTS** the SEC's Motion for Partial Summary Judgement (Dkt. # 50.)  The Court **GRANTS** OTA, LLC's Motion to Set Aside Clerk's Entry of Default (Dkt. # 52) and **VACATES** the Clerk's Entry of Default.  (Dkt. # 24.)

**IT IS SO ORDERED**.

**DATED:**  January 3, 2024.

Hon. David Alan Ezra
Senior U.S. District Judge