**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | |
| **LEENA JAITLEY, D/B/A MANAGED OPTIONS TRADING and OPTIONS BY PROS,** | **Civil Action No.:  1:21-cv-832-DAE** |
| **Defendant,** | |
| **and** | |
| **TARABEN PATEL and OTA LLC,** | |
| **Relief Defendants.** | |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION**
**FOR FINAL JUDGMENT AND REMEDIES AGAINST DEFENDANT JAITLEY**

TABLE OF CONTENTS

Table of Authority.................................................................................................. ii

Preliminary Statement........................................................................................... 1

Procedural History ................................................................................................ 3

Factual Background ............................................................................................... 4

   I.   Jaitley fraudulently operated OBP/MOT. ........................................................ 4

   II.   Jaitley received $672,833 in money and goods from victims.............................. 5

   III.  The Ellis County Sheriff's Office seized documents from Jaitley's home related to OBP/MOT and other options websites. ............................................................. 6

Argument ............................................................................................................... 8

   I.   The Court should impose remedies against Jaitley following summary judgment. ............ 8

   II.   The Court should order Jaitley to disgorge the $672,833 in net profits she received from her fraudulent conduct. ............................................................................ 9

   III.  The Court should order Jaitley to pay $158,835 in prejudgment interest......................... 11

   IV.  The Court should order Jaitley to pay at least $672,833, her gross pecuniary gain, in civil penalties............................................................................................... 12

   V.   The Court should permanently enjoin Jaitley from violating the Antifraud Provisions.... 15

Conclusion ............................................................................................................. 16

# TABLE OF AUTHORITY

**Cases**

*Liu v. SEC*,
    591 U.S. 71 (2020)...................................................................................... 9

*SEC v. Blackburn*,
    15 F.4th 676 (5th Cir. 2021) ...................................................................... 8

*SEC v. Blatt*,
    583 F.2d 1325 (5th Cir. 1978) ............................................................10-11, 15

*SEC v. Carter*,
    No. 4:19-CV-100-SDJ, 2022 WL 4587526 (E.D. Tex. Sept. 29, 2022)...................... 8, 15

*SEC v. Faulkner,*
    No. 3:16-cv-1735, 2021 WL 75551 (N.D. Tex. Jan. 8, 2021)......................................... 11

*SEC v. Fowler*,
    6 F.4th 255 (2d Cir. 2021) ...................................................................... 10

*SEC v. Gann*,
    565 F.3d 932 (5th Cir. 2009) .................................................................... 15

*SEC v. Halek*,
    537 F. App'x 576 (5th Cir. 2013) ................................................................ 10

*SEC v. Hallam*,
    42 F.4th 316 (5th Cir. 2022) ...................................................................8-11

*SEC  v. Helms*,
    2015 WL 5010298 (W.D. Tex. Aug. 21, 2015), *adhered to on reconsideration*,
    2015 WL 6438872 (W.D. Tex. Oct. 20, 2015) ................................................. 12

SEC v. Kahlon,
    No. 4:12-CV-517, 2016 WL 5661642 (E.D. Tex. Sept. 30, 2016), *aff'd*, 873 F.3d
    500 (5th Cir. 2017)........................................................................................ 8

*SEC v. Life Partners Holdings, Inc.*,
    854 F.3d 765 (5th Cir. 2017) ............................................................ 8, 13, 15

*SEC v. Montgomery,*
    No. CV SA-20-CA-598 , 2021 WL 210749 (W.D. Tex. Jan. 20, 2021) ......................... 11

*SEC v. Morris*,
    No. 3:20-CV-02958-B, 2022 WL 9497046 (N.D. Tex. Oct. 14, 2022)............................. 9

*SEC v. Moss*,
No. 4:20-CV-972-SDJ, 2022 WL 757226 (E.D. Tex. Mar. 11, 2022) ............................ 15

SEC v. Team Res. Inc.,
No. 22-10359, 2023 WL 1434277 (5th Cir. Feb. 1, 2023), *cert. denied*, 143 S. Ct.
2665, 216 L. Ed. 2d 1240 (2023) ....................................................................................... 8

*SEC v. Thomas*,
No. 3:13-CV-739-L, 2014 WL 840030 (N.D. Tex. Mar. 4, 2014) .................................. 11

*SEC v. United Energy Partners, Inc.,*
88 F. App'x 744 (5th Cir. 2004) ................................................................................ 11-12

SEC v. Voight,
No. CV H-15-2218, 2021 WL 5181062 (S.D. Tex. June 28, 2021) *aff'd*, 2023 WL
1778178 (5th Cir. Feb. 6, 2023) ....................................................................................... 12

*SEC v. Voight*,
No. 21-20511, 2023 WL 1778178 (5th Cir. Feb. 6, 2023) *aff'd sub nom. Hallam*,
42 F.4th 316 ................................................................................................................ 11-12

**Statutes**
15 U.S.C. §77t(d) ...................................................................................................................... 12

15 U.S.C. § 77t(d)(2)(C) ........................................................................................................... 12

15 U.S.C. §78u(d)(3) ................................................................................................................. 12

15 U.S.C. § 78(u)(d)(7) ............................................................................................................... 9

15 U.S.C. § 78u(d)(3)(A)(ii) ....................................................................................................... 9

15 U.S.C. § 78u(d)(3)(B)(iii) ................................................................................................... 12

15 U.S.C. § 80b-9(e)(2) ............................................................................................................ 12

15 U.S.C. § 80b-9(e)(2)(C) ....................................................................................................... 12

**Rules**
17 C.F.R. 201.1001 ................................................................................................................... 12

## PRELIMINARY STATEMENT

Defendant Leena Jaitley violated the antifraud provisions of the federal securities laws by defrauding victims in an options trading scam that led to at least 15 victims losing more than $800,000. In its Complaint, the SEC alleged that Jaitley engaged in a scheme to defraud investors, by, among other things: (1) falsely holding herself out as an experienced investment advisor, supervising a team of dozens of traders, including former Goldman Sachs and JP Morgan traders; (2) falsely touting her organization as having a long track record of successful investing using a proprietary methodology; and (3) falsely stating her businesses were located in the MetLife Building on Park Avenue in midtown Manhattan.  The Court granted the SEC summary judgment on all of its claims against Jaitley, finding the SEC presented evidence that Jaitley "made misrepresentations of information that is obviously important to investors, including the identity of who was running the operation in question." The Court also concluded that Jaitley engaged in other conduct "intended to deceive investors," such as using fake names, and found "ample evidence that Jaitley acted with scienter."

The SEC now seeks a final judgment ordering the following remedies against Jaitley: disgorgement of Jaitley's fraudulently obtained net profits and prejudgment interest; a civil penalty equal to her ill-gotten gains; and a permanent injunction enjoining Jaitley from further violations of the antifraud provisions of the securities laws.

*Disgorgement and Prejudgment Interest*. Courts routinely order defendants who, like Jaitley, violated the antifraud provisions of the securities laws to disgorge the net profits of their fraudulent conduct. Jaitley fraudulently charged victims hundreds of thousands of dollars in performance fees, start-up fees, and termination fees. She also lied to one victim, telling him he was the subject of an SEC investigation, when in reality it was Jaitley who later became the

subject of the SEC investigation that led to this action. Jaitley convinced her victim to wire her over $40,000, lease her a BMW, and purchase her handbags, an iPhone, jewelry, and gift cards all to prove his identity as part of the SEC investigation she fabricated. In total, as a result of her fraudulent conduct, Jaitley received $672,833 in net profits from her victims. The Court should order her to disgorge this amount and pay $158,835 in prejudgment interest.

*Civil Penalty*. Courts consider a variety of factors when considering civil penalties for violations of the antifraud provisions of securities laws, including: the egregiousness; the degree of scienter; the risk of loss; the recurrent nature of the conduct; the defendant's acceptance of responsibility; and the defendant's financial condition. Jaitley who operated the options trading scheme for more than two years and covered up her actions using fake names and blocked phone numbers acted egregiously, with a high degree of scienter, and without remorse. Her actions created substantial risk and actual loss for her victims. A recent search of Jaitley's home by law enforcement in Ellis County proves that Jaitley withheld relevant documents during discovery and strongly suggests that Jaitley continued in her fraudulent activities after the Complaint was filed. The Court should order Jaitley to pay a third-tier penalty—the most severe penalty under the securities laws—equal to at least her gross pecuniary gain of $672,833.

*Permanent Injunction*. Courts consider many of the same factors in permanently enjoining securities law violators from further violations of the antifraud provisions. Moreover, Jaitley's continued conduct even after the Complaint was filed and lack of remorse show that there is a reasonable likelihood that she will continue to violate securities laws unless enjoined. For the same reasons the Court should impose a civil third-tier penalty:  Jaitley's egregious, repeated, and intentional conduct that led to substantial victim losses for which Jaitley has shown no remorse; the Court should permanently enjoin Jaitley from further violations.

## PROCEDURAL HISTORY

The Complaint alleges that Jaitley violated various antifraud provisions of federal securities law:  Section 10(b) and Rules 10b-5(a)-(c) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b) and 17 C.F.R. § 240.10b-5(a)-(c)]; Section 17(a)(1)-(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1)-(3)]; and Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6(1)-(2)].[1] ECF No. 1. The Complaint also alleges an equitable claim of unjust enrichment against Jaitley's mother, Taraben Patel ("Patel") and OTA LLC ("OTA") (collectively, "Relief Defendants"). *Id.*

On March 7, 2023, the SEC moved for Partial Summary Judgment on all of its claims against Jaitley. ECF No. 50 ("Motion for Summary Judgment"). On November 13, 2023, Magistrate Lane issued a report recommending the Court grant the SEC's Motion for Summary Judgment. ECF No. 69 ("Report & Recommendation"). On January 3, 2024, the Court adopted Magistrate Lane's Report and Recommendation, finding that Jaitley violated the Antifraud Provisions. ECF No. 70 ("Summary Judgment Order").

Simultaneously with the filing of this motion, the SEC is filing an unopposed motion to dismiss with prejudice the Relief Defendants ("Motion to Dismiss"). If the Court grants the SEC's Motion to Dismiss, the only issue remaining in the case is the remedies to which the SEC is entitled, which this brief addresses.

---

[1] The SEC, in its Motion for Summary Judgment against Jaitley, ECF No. 50, and the Court in its Order Adopting Report and Recommendation, ECF No. 70, refer to the Securities Act Section 17(a) and the Exchange Act Section 10(b) and Rule 10b-5 as the "antifraud provisions." For simplicity, in this brief, the SEC will refer to Securities Act Section 17(a), Exchange Act Section 10(b) and Rule 10b-5, <u>and</u> Advisers Act Section 206 as the "Antifraud Provisions."

## FACTUAL BACKGROUND

### I.    Jaitley fraudulently operated OBP/MOT.

As detailed in the Court's Summary Judgment Order and Magistrate Lane's Report and Recommendation, Jaitley operated a scheme using two businesses, Options by Pros ("OBP") and Managed Options Trading ("MOT"), (collectively "OBP/MOT"), to misrepresent herself as an experienced options trader, working with a large team of experienced former Goldman Sachs and JP Morgan traders, executing a proprietary trading methodology from the MetLife building in New York City. *See* Summary Judgment Order at 5, 7; Report and Recommendation at 11, 12; *see also* Complaint at ¶¶ 17, 18, 29, ECF No. 1. In reality, Jaitley acted alone or with the assistance of her father from Austin, Texas. *See* Summary Judgment Order at 7. Jaitley hid her conduct using fake names and blocked phone numbers. *Id.* Jaitley's promise of a proprietary trading strategy was also false. *Id.* Jaitley lied to clients and told them that OBP/MOT used "stops" to limit the risk of loss. *See,* Ex. P-31, Client 1 Decl. at ¶¶ 11, 16; Ex. P-32, Client 2 Decl. at ¶ 36.[2] Jaitley's victims, however, learned only after suffering significant losses that there were no stops in place. *See, e.g.,* Ex. P-31, Client 1 Decl. at ¶¶ 11, 16, 23; Ex. P-32, Client 2 Decl. at ¶ 50; P-33, Client 3 Decl. at ¶ 26. As a result of Jaitley's trades, at least fifteen victims lost a total of at least $800,000 in principal. Ex. P-85, Furlano Decl. at ¶ 15.

---

[2] All exhibits are attached to the accompanying Appendix and Declaration of Ashley Reed ("Appendix"). Exhibits marked P-1 through P-66 were previously marked as an exhibit in support of the SEC's Motion for Summary Judgment. ECF Nos. 50, 51. Clients of OBP/MOT are referred to by numbers in this brief to protect their privacy. Clients' names have not been redacted from the exhibits to the accompanying Appendix. References to Clients 1, 2, and 3 are to the same individuals similarly referred to in the Motion for Summary Judgment.

**II.     Jaitley received $672,833 in money and goods from victims.**

Through OBP/MOT, Jaitley offered potential clients a "managed account trading" service whereby victims would grant OBP/MOT access to their brokerage account and a "trader" would buy or sell options with the client's money. *See* Ex. P-15, OBP Website Capture from Client 2 at 15-18; Ex. P-32, Client 2 Decl. at 2 (describing capture of website); Ex. P-40, MOT Website Capture at 1-3. Jaitley generated revenue from her scam by charging startup fees, termination fees, and a thirty percent performance fee for any gains made by OBP/MOT for the managed account trading service ("Managed Account Trading Fees").[3] Jaitley started collecting fees from her victims in August 2018 and continued through at least October 2020. Ex. P-85, Furlano Decl. at ¶ 7. Jaitley created profits for several of her victims before ultimately causing catastrophic losses with her trades. *See, e.g.,* Ex. P-32, Client 2 Decl. at ¶ 45; Ex. P-33, Client 3 Decl. at ¶ 10. As a result, many victims paid Jaitley performance fees of 30% of their profits before later losing all of their principal. Ex. P-32, Client 2 Decl. at ¶¶ 45, 50; P-33, Client 3 Decl. at ¶¶ 10, 26.

To pay their Managed Account Trading Fees, victims were instructed to transfer money to one of four bank accounts. For example, Client 2 received instructions to wire $6,845 in performance fees to a "OptionsPros" Bank of America account. *See, e.g.*, Ex. P-91, OBP Email Chain with Client 2; Ex. P-32, Client 2 Decl. at ¶ 45 (discussing Ex. P-91). SEC Assistant Chief Accountant, Donato Furlano, reviewed brokerage records and bank statements and identified transfers of Managed Account Trading Fees by fifteen OBP/MOT victims to four separate bank

---

[3] *See* Summary Judgment Order at 11; *see also* Ex. P-16, OBP Email to Client 1 ("you retain 70% of the profit and owe us 30% of the profits" and discussing a "one-time" $2,500 fee); Ex. P-28 OBP Agreement at 1 ("30% of profits you will owe" and "$5,000 for termination"); Ex. P-32, Client 2 Decl. at ¶¶ 42, 45, 46.

accounts.[4] Based on Furlano's review of financial records, Jaitley's victims transferred a total of $524,664 in Managed Account Trading Fees. Ex. P-85, Furlano Decl. at ¶ 8.

In addition to these ill-gotten gains, Jaitley convinced Client 3 that he was the subject of an SEC investigation. Jaitley used aliases to convince Client 3 to lease her a BMW and purchase an iPhone, Gucci and Louis Vuitton handbags, jewelry, and gift cards, all under the guise of Client 3 establishing his identity for the SEC investigation Jaitley concocted.[5] Ex. P-33, Declaration of Client 3 at ¶¶ 13-18. According to Client 3, he spent a total of $148,169.25, including $44,260.45 in wires as part of the fabricated SEC investigation. *See* Ex. P-33, Client 3 Decl. ¶¶ 13-20; Ex. P-85, Furlano Decl. at ¶¶ 9-12.

In total, between the Managed Account Trading Fees and Client 3's additional wire transfers and purchase of goods, Jaitley received $672,833 from her victims. Ex. P-85, Furlano Decl. at ¶ 13.

### III.    The Ellis County Sheriff's Office seized documents from Jaitley's home related to OBP/MOT and other options websites.

On August 17, 2023, the Ellis County, Texas, Sheriff's Office ("ECSO") executed a search of Jaitley's residence in Midlothian, Texas. Ex. P-86, Declaration of Investigator Pearson ("Pearson Decl."). During the search, ESCO seized documents that ESCO later made available to the SEC and that the SEC subsequently produced to Jaitley. *See* Ex. P-86; Appendix at ¶ 5 (documents produced to Jaitley).

---

[4] Ex. P-85, Furlano Decl. at ¶ 6 (identifying transfers to BOA Account x8964, BOA Account x9189, Cap One Account x7899, and Cap One x5821). Taraben Patel, in whose name three accounts were opened, denies opening any bank accounts associated with OBP/MOT or receiving any money from OBP/MOT clients. ECF No. 20, Patel Answer at ¶¶ 75-76.

[5] Jaitley later became the subject of an actual SEC investigation that led to the SEC filing its Complaint.

The documents ESCO seized from Jaitley's home provide additional circumstantial evidence of what was already established in the Court's Summary Judgment Order:  Jaitley made material misrepresentations to investors through OBP/MOT. *See id*. at 5. Specifically, documents seized by ESCO provide additional evidence that Jaitley registered and controlled the OBP website through GoDaddy, controlled the OBP Google email and voice accounts, used the MOT Google email account, used multiple Twitter accounts to promote OBP, and used aliases to post reviews of OBP on Sitejabber.com, a website that hosts reviews of businesses.[6] *See* Ex. P-87 (excerpts of documents referencing OBP/MOT obtained by ESCO from Jaitley's residence); *About Us*, Sitejabber, https://www.sitejabber.com/about-us. The documents also provide evidence that Jaitley had access to the bank accounts in which Jaitley's victims deposited fees. Specifically, the documents include login information for the BOA Account x8964, BOA Account x9189, and Cap One Account x7899. Ex. P-87 at 0000284, 0000287, 0000291-2.

ESCO also seized documents from Jaitley's residence referencing three other websites, which based on their names, appear to offer clients assistance in trading options. ESCO found documents regarding the following websites:

- Optionsgonewild.com ("Options Gone Wild"), *see* Ex. P-88;

- Optionscallsputs.com ("Options Calls Puts"), *see* Ex. P-89; and

- Optionsalertservice.com ("Options Alert Service"), *see* Ex. P-90.

The documents seized indicate that Jaitley registered the websites, created email addresses for the websites, and using a variety of usernames and passwords, submitted online reviews of the

---

[6] Many of the documents ESCO seized from Jaitley's residence include usernames and passwords. The usernames and passwords have been redacted.

websites at Sitejabber and Trustpilot.[7] *See* Exs. P-88; P-89; P-90. Many of the documents seized

are dated with dates that begin in December 2021, just after the Complaint was filed, and

continue through at least January 2023. *Id.*

## ARGUMENT

### I.    The Court should impose remedies against Jaitley following summary judgment.

Courts routinely order remedies on a motion by the SEC when, as in this case, the Court

has granted the SEC summary judgment on liability. *See, e.g.*, *SEC v. Blackburn*, 15 F.4th 676,

680 (5th Cir. 2021) (affirming lower court's decision granting SEC's motion for remedies after

granting summary judgment); *SEC v. Kahlon*, No. 4:12-CV-517, 2016 WL 5661642, at *6 (E.D.

Tex. Sept. 30, 2016), *aff'd*, 873 F.3d 500 (5th Cir. 2017) (after first granting summary judgment,

granting the SEC's motion for remedies); *SEC v. Carter*, No. 4:19-CV-100-SDJ, 2022 WL

4587526, at *1 (E.D. Tex. Sept. 29, 2022) (granting SEC motion for remedies after granting

summary judgment); *see also SEC v. Hallam*, 42 F.4th 316, 341 (5th Cir. 2022) (affirming denial

of request for evidentiary hearing and finding remedies after motion by the SEC in case settled

by consent judgment); *SEC v. Team Res. Inc.*, No. 22-10359, 2023 WL 1434277, at *2 (5th Cir.

Feb. 1, 2023), *cert. denied*, 143 S. Ct. 2665, 216 L. Ed. 2d 1240 (2023) (stating in a case

resolved by consent judgment, "the Federal Rules of Civil Procedure allow district courts to

decide motions—including motions for remedies under the securities laws such as the one at

issue here—'on briefs, without oral hearings.'") (quoting *Hallam*, 42 F.4th at 324).[8]

---

[7] Trustpilot, like Sitejabber, is an online review platform for websites. *About us*, Trustpilot, https://www.trustpilot.com/about.

[8] As discussed below in *Hallam*, 42 F.4th at 344, the Fifth Circuit considered an amendment to the Exchange Act and noted that before the Exchange Act was amended, courts, not juries, determined disgorgement amounts. In *Hallam*, the court noted that it was not considering whether a defendant may be entitled to a jury trial right to determine a disgorgement amount after the amendment to the Exchange Act. *Id.* It is well established in securities cases involving

As described below, the Court should order Jaitley to disgorge her ill-gotten gains, pay a

civil penalty, and should enjoin her from further violations of the federal securities laws.

## II.    The Court should order Jaitley to disgorge the $672,833 in net profits she received from her fraudulent conduct.

The Court should order Jaitley to pay disgorgement equal to the net profits causally

connected to Jaitley's violations of the antifraud provisions. A "disgorgement award" is

permissible equitable relief under Section 21(d)(5) of the Exchange Act if it "does not exceed a

wrongdoer's net profits and is awarded for victims." *Liu v. SEC*, 591 U.S. 71, 75

(2020).[9] Disgorgement is also authorized under amendments to the Exchange Act that Congress

enacted after *Liu*. *See* Exchange Act Section 21(d)(7), [15 U.S.C. § 78(u)(d)(7)] ("In any action

or proceeding brought by the Commission under any provision of the securities laws,

the Commission may seek, and any Federal court may order, disgorgement."); Exchange Act

Section 21(d)(3)(A)(ii), 15 U.S.C. § 78u(d)(3)(A)(ii) (granting jurisdiction to "require

disgorgement . . . of any unjust enrichment by the person who received such unjust enrichment

as a result of such violation."). The Fifth Circuit has stated that these new provisions "authorize

legal 'disgorgement' apart from the equitable 'disgorgement' permitted by *Liu*." *Hallam*, 42

F.4th at341. The court of appeals also stated that the amendments "ratif[y] the pre-*Liu*

_____

the SEC that the court has broad discretion to set monetary remedies after liability is found. *See, e.g.*, *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 781-82 (5th Cir. 2017) ("At the remedies stage, trial judges may make factual findings and rely on such findings in assessing the amount of civil penalties so long as the court's findings do not conflict with the jury's findings as to liability."); *Team Res. Inc.*, 2023 WL 1434277, at *2 (affirming trial court finding disgorgement and penalty amount); *Carter*, 2022 WL 4587526, at *1 (adopting finding of disgorgement and civil penalty by magistrate).

[9] Section 21(d)(5) states: "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."  15 U.S.C. § 78u(d)(5).

disgorgement framework used by every circuit court of appeals." *Id.* at 338; *see also SEC v. Morris*, No. 3:20-CV-02958-B, 2022 WL 9497046, at *3 (N.D. Tex. Oct. 14, 2022) (discussing *Hallam*). In this case, any difference in approach between legal disgorgement and equitable disgorgement is immaterial.

Under both grants of authority, "the SEC has the burden reasonably to approximate the defendant's 'unjust enrichment' attributable to the securities violation," which "may not include 'income earned on ill-gotten profits'" . . . "but it may include interest." *Hallam*, 42 F.4th at 341 (quoting *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)); *see also SEC v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021). Once the SEC establishes a reasonable approximation of the defendant's ill-gotten gains, the burden shifts to the defendant, who "must prove that the requested amount is 'unreasonable.'" *Hallam*, 42 F.4th at 341 (quoting *SEC v. Halek*, 537 F. App'x 576, 581 (5th Cir. 2013)).

Application of the disgorgement standard set forth in *Liu* and *Hallam* is simple in this case. The Court's Summary Judgment Order establishes that Jaitley violated the Antifraud Provisions. Summary Judgment Order at 14. The SEC, through Furlano's Declaration, has provided a reasonable approximation of Jaitley's ill-gotten gains from the fraud the Court already found Jaitley committed: $672,833 in net profits in money and goods. *See* Ex. P-85, Furlano Decl. at ¶ 12. Jaitley, who asserted her Fifth Amendment right against self-incrimination during discovery, has provided no explanation for why she would be entitled to the money and goods she received from victims or why the money does not constitute net profits from her fraudulent conduct. *See, e.g.*, Ex. P-5, Jaitley's Resp. and Objs. SEC's Interrogs., Disc. Reqs. (asserting Fifth Amendment right and failing to provide requested information, for example: brokerage accounts accessed and used (Interrogatory 4); transfers to and from clients (Document

Requests 8 and 9); and compensation and gifts received (Document Request 10)). Far from explaining the money she received, Jaitley has been unwilling to even confirm whether she has a bank account. Ex. P-36, Jaitley Dep. Tr. at 24:12-15. Accordingly, the SEC has met its burden to reasonably approximate Jaitley's unjust enrichment, *Hallam*, 42 F.4th at 341, and the Court should order Jaitley to disgorge the $672,833 she illegally obtained.

**III.    The Court should order Jaitley to pay $158,835 in prejudgment interest.**

It is well-settled that courts may order securities law violators to pay prejudgment interest on disgorgement amounts to prevent them from benefitting from the use of ill-gotten gains interest-free. *See Blatt,* 583 F.2d at 1335. Courts in the Fifth Circuit routinely order defendants to pay prejudgment interest on unjust enrichment they ordered disgorged. *See, e.g.*, *SEC v. Voight*, No. 21-20511, 2023 WL 1778178, at *1 (5th Cir. Feb. 6, 2023); *SEC v. Faulkner,* No. 16-cv-1735, 2021 WL 75551, at *9-*10 (N.D. Tex. Jan. 8, 2021), *aff'd sub nom. Hallam*, 42 F.4th 316; *SEC v. Montgomery,* No. 20-cv-598, 2021 WL 210749, at *6-*7 (W.D. Tex. Jan. 20, 2021). Whether to award prejudgment interest is within the district court's discretion. *SEC v. United Energy Partners, Inc.,* 88 F. App'x 744, 747 (5th Cir. 2004); *Montgomery,* 2021 WL 210749, at *6.

Courts commonly use the interest rate used by the Internal Revenue Service for unpaid balances, 26 U.S.C. § 6621(a)(2), to calculate prejudgment interest in SEC enforcement actions. *See, e.g.*, *Faulkner,* 2021 WL 75551, at *9; *SEC v. Thomas*, 2014 WL 840030, at *3 (N.D. Tex. Mar. 4, 2014). Based on a principal disgorgement amount of $672,833, application of the tax underpayment rate from July 2020 (the last month in which Jaitley received fees from investors) through August 31, 2024, results in a prejudgment interest amount of $158,835. Ex. P-85, Furlano Decl. at ¶ 14.

**IV.     The Court should order Jaitley to pay at least $672,833, her gross pecuniary gain, in civil penalties.**

The Securities Act, Exchange Act, and Advisers Act authorize courts to impose civil penalties, and establish an escalating, three-tier structure for securities violations depending upon the egregiousness of the defendant's conduct and the losses (or risk of losses) to investors. 15 U.S.C. §77t(d) (Securities Act); 15 U.S.C. §78u(d)(3) (Exchange Act); 15 U.S.C. § 80b-9(e)(2) (Advisers Act); 17 C.F.R. 201.1001 (increasing statutory amounts to reflect inflation).  These penalties are designed to punish and deter because, without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains. *SEC v. Voight*, No. CV H-15-2218, 2021 WL 5181062, at *14 (S.D. Tex. June 28, 2021), *aff'd*, No. 21-20511, 2023 WL 1778178 (5th Cir. Feb. 6, 2023) (quotations and citations omitted).

A third-tier penalty, which is appropriate here, requires that the violation "involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and that "such violation directly or indirectly result in substantial losses or create a significant risk of substantial losses to other persons." *Id.*; 15 U.S.C. § 77t(d)(2)(C) (Securities Act); 15 U.S.C. § 78u(d)(3)(B)(iii) (Exchange Act); 15 U.S.C. § 80b-9(e)(2)(C) (Advisers Act). The maximum civil penalty is the greater of the gross amount of pecuniary gain or the statutory maximum per violation, $230,464. 15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii); 15 U.S.C. § 80b-9(e)(2)(C); 17 C.F.R. 201.1001. While the statutory tier determines the maximum penalty allowed per violation, the actual amount of the penalty to be imposed is left to the Court's discretion. *See Voight*, 2021 WL 5181062, at *14 (quotations and citations omitted); *SEC v. Helms*, No. A-13-CV-01036 ML, 2015 WL 5010298, at *19 (W.D. Tex. Aug. 21, 2015), *adhered to on reconsideration*, No. A-13-CV-01036 ML, 2015 WL 6438872 (W.D. Tex. Oct. 20, 2015); s*ee also SEC  v. United Energy Partners, Inc.*, 88 F. App'x 744, 747 (5th Cir. 2004).

The following factors are relevant in determining whether a civil penalty is appropriate and, if so, in what amount: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 623 (W.D. Tex. 2014).

**Egregiousness and Degree of Scienter.** As set out above and in the Complaint, Jaitley's conduct was egregious and executed with a high degree of scienter. As this Court already found:

> The SEC presented ample evidence that Jaitley acted with scienter. Despite knowing that neither she nor Mr. Patel had decades of financial services experience at Goldman Sachs, she made such a representation. Jaitley similarly knew OBP/MOT did not use any proprietary trading techniques, nor did the company employ numerous traders. The company was not even located in New York, a claim Jaitley also made. And Jaitley's use of fake names and blocked phone numbers underscores that Jaitley intended to deceive investors.

Summary Judgement Order at 7.

**Risk of Loss.** Jaitley's false claims not only exposed victims to risk of loss, but led to victims sustaining substantial losses. Jaitley lied to victims about using "stops" to prevent significant losses in their accounts. *See,* Ex. P-31, Client 1 Decl. at ¶¶ 11, 16; Ex. P-32, Client 2 Decl. at ¶ 36. As a result, Jaitley's trades caused losses for her victims of more than $800,000. Ex. P-85, Furlano Decl. at ¶ 15.

**Recurrent.** Jaitley's fraudulent conduct was recurrent both in terms of the length of her fraud and the number of victims. Jaitley operated OBP/MOT for over two years ensnaring at least fifteen victims. *See* Ex. P-85, Furlano Decl. at ¶¶ 6, 7 (fifteen victims paid fees from at least August 2018 to October 2020). Further, based on documents ECSO seized from Jaitley's home, Jaitley appears to have continued to operate websites offering options trading services to the

13

public. *See* Ex. P-88 (Options Gone Wild); Ex. P-89 (Options Calls Puts); Ex. P-90 (Options Alert Service). The Complaint in this action was filed in September 2021. ECF No. 1. The documents seized from ECSO indicate that Jaitley was operating Options Gone Wild and Options Calls Puts by at least December 2021 and Options Alert Service by January 2022, just months after the SEC filed its Complaint. Ex. P-88 at SEC-ECSO-E-000403, 419, 444; Ex. P-89 at SEC-ECSO-E-000382, 422, 670; Ex. P-90 SEC-ECSO-E-000231, 390, 408-09, 456. The same documents suggest Jaitley continued to operate her new websites as late as January 2023. *See* Ex. P-90 at SEC-ECSO-E-000406. Far from isolated, Jaitley's fraudulent conduct was continuous.

**No Admission of Wrongdoing.** Jaitley has refused to take responsibility for her conduct, instead, blaming her recently deceased father. *See, e.g.*, Ex. P-36, Jaitley Dep. Tr. at 28-29, 31-32, 34, 44-45, 82-83, 93 (asserting Fifth Amendment right against self-incrimination); Jaitley Amended Answer, ECF No. 22 at 12 ("Mr. … Patel was the owner and operator of [OBP/MOT]."). Jaitley further tried to hide her actions by failing to provide relevant documents regarding OBP/MOT during discovery. *Compare*, Ex. P-5 at 10-11 (Jaitley response to Requests for Production Nos. 6 and 7 about marketing on behalf OBP/MOT) and Ex. P-87 (OBP/MOT documents seized from Jaitley's home). To commit her fraud, Jaitley used fake names, blocked phone numbers, and numerous usernames and passwords to hide her operation of OBP/MOT and her three more recent websites. *See* Summary Judgment Order at 7; Ex. P-87 (usernames and passwords associated with OBP/MOT); Ex. P-88 (usernames and passwords associated with Options Gone Wild); Ex. P-89 (usernames and passwords associated with Options Calls Puts); Ex. P-90 (usernames and passwords associated with Options Alert Service). Jaitley has consistently refused to admit her role in the OBP/MOT fraud and attempted to use subterfuge to cover her tracks.

In summary, five of the six factors courts consider in weighing penalties favor the Court imposing a substantial third-tier penalty on Jaitley. The sixth factor, Jaitley's financial condition, is impossible to evaluate because Jaitley did not meaningfully participate in discovery. *See, e.g.*, Ex. P-36, Jaitley Dep. Tr. at 24:12-15 (asserting Fifth Amendment privilege when asked about bank accounts). The record is clear, Jaitley, who has taken no responsibility for her actions, deceived her victims, caused significant losses, and acted repeatedly. The court should order her to pay a civil penalty equal to at least her gross pecuniary gain of $672,833.

## V.    The Court should permanently enjoin Jaitley from violating the Antifraud Provisions.

Permanent injunctive relief is particularly important in this case. Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)] authorize the SEC to seek injunctive relief when a person or entity is engaged in or is about to engage in conduct constituting a violation of securities laws. "The critical question [for the court] in issuing the injunction . . . is whether [the] defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *See Blatt*, 583 F.2d at 1334. Courts routinely permanently enjoin defendants who have violated securities laws from further violations of the same statutes and rules. *See, e.g.*, *Life Partners Holdings, Inc.*, 854 F.3d at 784; *Carter*, 2022 WL 4587526, at *2 ; *SEC v. Moss*, No. 4:20-CV-972-SDJ, 2022 WL 757226, at *7 (E.D. Tex. Mar. 11, 2022).

Courts consider many of the same factors when imposing permanent injunctions as when considering penalties, including the (1) egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) degree of scienter; and (4) sincerity of the defendant's recognition of her transgression. *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009). Courts also consider the likelihood of the defendant's job providing opportunities for future violations. *Id.*

As described above, the egregiousness of Jaitley's actions, the degree of her scienter, the recurrent nature of her conduct, and her failure to admit wrongdoing, all weigh in favor of the Court permanently enjoining her from violating the Antifraud Provisions. It is clear from the record that during the relevant period, Jaitley acted as an unregistered investment adviser and offered options trading services through OPB/MOT. Summary Judgment Order at 11. It also appears that after the SEC filed its Complaint, Jaitley operated three more websites offering options related services. *See* Exs. P-88; P-89; P-90. Based on the record, Jaitley is reasonably likely to continue to violate the Antifraud Provisions and the Court should protect the public by permanently enjoining Jaitley from further violations, as set forth in the SEC's Proposed Judgment.

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests the Court grant the SEC's Motion for Final Judgment and Remedies Against Defendant Jaitley, enter the Proposed Judgment submitted with this motion, and any other relief to which the SEC is entitled.

Dated: August 16, 2024                    Respectfully submitted,

                                          /s/ *Charlie L. Divine*
                                          Charlie L. Divine
                                          Zachary A. Avallone
                                          SECURITIES AND EXCHANGE COMMISSION
                                          100 F Street, N.E.
                                          Washington, DC 20549
                                          (202) 551-6673 (Divine)
                                          (202) 551-4479 (Avallone)
                                          Divinec@sec.gov
                                          Avallonez@sec.gov

                                          ATTORNEYS FOR PLAINTIFF SECURITIES
                                          AND EXCHANGE COMMISSION

### **CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2024, I filed the foregoing on the Court's CM/ECF

system, which will send a notice of electronic filing to all CM/ECF participants.  I further certify

that I served a true and correct copy of the foregoing document and the notice of electronic filing

via electronic mail and registered mail on all non-CM/ECF parties as detailed below.


Taraben Patel
12808 Withers Way
Austin, TX 78727

Via email to tarapatel6474@gmail.com


/s/ Charlie L. Divine