## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| LEENA JAITLEY, D/B/A MANAGED OPTIONS TRADING and OPTIONS BY PROS, | § § § | Civil Action No.: 1:21-cv-832-DAE |
| Defendant, | § § | |
| and | § § | |
| TARABEN PATEL and OTA LLC, | § | |
| Relief Defendants. | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DAVID EZRA
UNITED STATES DISTRICT JUDGE:

Plaintiff Securities and Exchange Commission's ("Commission") Motion for Final Judgment and Remedies Against Defendant Jaitley (Dkt. 79) and all related briefing is before the court.[1] After reviewing the pleadings, the relevant case law, as well as the entire case file, the undersigned recommends the District Judge **GRANT** the motion.

### I.    PROCEDURAL HISTORY

The Commission filed suit against Defendant Leena Jaitley ("Jaitley"), doing business as Options by Pros ("OBP") and Managed Option Trading ("MOT") on September 20, 2021. Dkt. 1. The suit included Relief Defendants Taraben Patel ("Patel") and OTA LLC (together, "Relief

---

[1] The motion was referred by United States District Judge David Ezra to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Text Order, Aug. 19, 2024.

Defendants"). The complaint alleged four claims that Jaitley violated the anti-fraud provisions of the Securities Act, 15 U.S.C. § 77a, *et seq.*, the Securities Exchange Act, 15 U.S.C. § 78a, *et seq.*, and the Investment Advisers Act, 15 U.S.C. § 80b-1, *et seq.*, causing at least fifteen individuals to lose approximately $1.48 million. *Id.* at 2–3, 12–16. A single claim for equitable relief was alleged against the Relief Defendants. *Id.* at 16.

After some motion practice, the Commission moved for Partial Summary Judgment on its claims against Jaitley (Dkt. 50), and the District Judge granted the motion (Dkt. 70) by adopting the undersigned's Report and Recommendation (Dkt. 69). In granting summary judgment against Jaitley, the District Judge found Jaitley liable for all four securities fraud claims, finding no genuine issue of material fact. Dkt. 70, at 14.

As for Relief Defendants, on August 19, 2024, the court granted Plaintiff's Unopposed Motion to Dismiss Relief Defendants and Terminate Trial Date (Dkt. 78). Dkt. 80. Relief Defendants were dismissed for the sake of expediency as all four claims against Defendant Jaitley had been resolved ahead of trial. *See* Dkt. 78 ¶ 2, 4 ("[T]he Court granted the SEC's Motion for Partial Summary Judgment against Defendant Jaitley finding Jaitley liable on all counts with which she was charged. ECF No. 70. As a result, only the SEC's claim against the Relief Defendants remains to be decided at trial."). The motion was unopposed, and the Relief Defendants were dismissed from the case. Dkt. 78. Determining the remedies to which Plaintiff is entitled is the only remaining task at issue in the case.

The Commission has now filed a Motion for Final Judgment and Remedies Against Defendant Jaitley. Dkt. 79. The Commission requests: (1) an order finding Defendant Jaitley liable to pay disgorgement of fraudulently obtained net profits and prejudgment interest ("PJI"); (2) civil penalties as requested herein; (3) an order permanently enjoining Jaitley from violating the antifraud provisions; and (4) the entry of the proposed final judgments attached to its motion as

pertains to Jaitley.

## II.  FINDINGS OF FACT

1.    From August 2018 through September 2021, Defendant Jaitley, working possibly with the assistance of her father (now deceased), caused fifteen individuals to lose at least $800,000 in principal and approximately $1.48 million total by retaining Jaitley's services. Dkt. 69, at 1–3. Jaitley carried out this scheme doing business as OBP and MOT (collectively, "OBP/MOT") through which she misrepresented herself as an options trader working with former Goldman Sachs and JP Morgan traders out of offices in New York. *Id.* at 2, 11–12; Dkt. 70, at 5, 7.

2.    Jaitley represented to clients that: (a) she and her father had decades of financial services experience at Goldman Sachs; (b) OBP/MOT used proprietary trading techniques; (c) OBP/MOT employed numerous traders who formerly worked at Goldman Sachs and JP Morgan; (d) the company's offices were located in the MetLife Building in New York; and (e) the company used "stops" to limit the risk of loss. Dkt. 70, at 7; Dkt. 51, Ex. P-31, Client 1 Decl. ¶¶ 11, 16; Dkt. 51, Ex. P-32, Client 2 Decl. ¶ 36; Dkt. 79-4, at 56. All of those statements are false. Dkt. 70, at 7. Jaitley also used fake names and telephone numbers to communicate with investors, which further underscores her deceptive intent. *Id.*

3.    As evidenced by flagrant misrepresentations to clients and her deceptive behavior masking her identity, the court concluded that there is no genuine dispute that Jaitley acted with scienter. *Id.*; Dkt. 69, at 15.

4.    Jaitley argues that she is not at risk of committing securities violations in the future as a first-time offender and requests the court cap the civil penalty in the amount applicable to first-tier violations. Dkt. 81, at 7.

5.    Jaitley received $672,833 in net profits from investors in money and goods. Dkt. 79-12, Ex. P-85, Furlano Decl. ¶ 13. Jaitley provided no explanation for why she could be

legitimately entitled to the money and goods. *See, e.g.*, Dkt. 79-3.

6.    Investor money was not used for the stated purpose of the investment. Instead, the money went to bank accounts shown to be in Jaitley's control while the investors suffered catastrophic losses from Jaitley's trades. Dkt. 79, at 6–7; Dkt. 79-12, Ex. P-85, Furlano Decl. ¶ 6. Three of the four bank accounts were opened in Jaitley's father's name, although he denied opening any bank accounts associated with OBP/MOT or receiving any money from OBP/MOT clients. Dkt. 20 ¶ 75–76.

7.    The Commission seeks to recover disgorgement so that it may return those funds to investors who lost significant sums of money when they invested money in the fraudulent scheme. Dkt. 79, at 9. The Commission further seeks to impose third-tier penalties against Jaitley. *Id.* at 12.

8.    Jaitley's conduct involved fraud, deceit, manipulation, or deliberate disregard of a regulatory requirement and directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

### III.    CONCLUSIONS OF LAW

1.    The Commission is authorized to seek, and the court is authorized to order, disgorgement that does not exceed a wrongdoer's net profits and is awarded for victims. 15 U.S.C. § 78u(d)(7); *see also id.* § 78u(d)(5). The district court has broad discretion in calculating the amount to be disgorged. *See, e.g., SEC v. Helms*, 2015 WL 5010298, *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir.1993)). Disgorgement need only be a reasonable approximation of profits causally connected to the violation. *See, e.g., Helms*, 2015 WL 5010298, at *19 (citing *SEC v. Seghers*, 298 F. Appx. 319, 336 (5th Cir. 2008)). In determining an approximate amount of ill-gotten profits, the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty. *SEC v. Voight*, 2021 WL 5181062, at *7 (S.D. Tex. June 28, 2021) (quoting

*First City Fin'l Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)). Doubts are to be resolved against the defrauding party. *SEC v. MacDonald*, 699 F.2d 47, 55 (1st Cir. 1983).

2.      An order for disgorgement and pre-judgment interest against Jaitley is proper because Jaitley violated the federal securities laws.

3.      An award of pre-judgment interest in a case involving violations of the federal securities laws rests within the equitable discretion of the district court to be exercised according to considerations of fairness. *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2nd Cir.1972); 15 U.S.C. § 78u(d)(7); *see also id.* § 78u(d)(5). When a securities law violator has enjoyed access to funds over a period of time as a result of his or her wrongdoing, requiring the wrongdoer to pay prejudgment interest is consistent with the equitable purpose of the remedy of disgorgement.

4.      The IRS underpayment of federal income tax rate as set forth in 26 U.S.C. § 6621(a)(2) is appropriate for calculating prejudgment interest in SEC enforcement actions such as this one. That rate of interest reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits a defendant derived from her fraud.

5.      The Securities Act and the Exchange Act both authorize courts to impose civil penalties, and establish an escalating, three-tier structure for securities violations depending upon the egregiousness of a defendant's conduct and the losses (or risk of losses) to investors. 15 U.S.C. §77t(d); 15 U.S.C. §78u(d)(3), and 17 C.F.R. 201.1001 (increasing statutory amounts to reflect inflation). These penalties are designed to punish individual violators and deter future violations of the securities laws, which is necessary because, without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains.

6.      The Commission has established that Jaitley's violations involved fraud and deceit and resulted in substantial losses of over $800,000 to investors. Jaitley is therefore subject to a third-

tier penalty. The amount of civil penalties to assess within the permissible statutory range is left to the Court's discretion.

7.    Under these statutes, the court may impose a civil penalty against a defendant not exceeding the greater of $230,464 for a natural person per violation or the gross amount of pecuniary gain to such defendant because of the violation. Because Jaitley's gross pecuniary gain exceeds the maximum statutory amount, those amounts are the maximum penalty that the court may impose.

8.    In determining the appropriate penalty, the court considers: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 623 (W.D. Tex. 2014).

9.    The following monetary relief is appropriate in this case: disgorgement of $672,833, representing net profits gained as a result of the conduct alleged in the Complaint; together with prejudgment interest thereon in the amount of $158,835; and a civil penalty in the amount of $672,833, pursuant to the Securities Act, 15 U.S.C. §77t(d), the Exchange Act, 15 U.S.C. §78u(d)(3), and the Advisers Act, 15 U.S.C. § 80b-9(e)(2). Jaitley shall satisfy this obligation by paying $1,504,501 to the Securities and Exchange Commission within 30 days after entry of the District Judge's Final Judgment.

### III.    RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Final Judgment and Remedies Against Defendant Jaitley (Dkt. 79) be **GRANTED**. The undersigned further **RECOMMENDS** the proposed order and final judgments at Dkt. 79-1 be entered.

**IV.    OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED November 26, 2024.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE