DATEUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | No. 1:21–CV–0832–DAE |
| Plaintiff, | § § § | |
| vs. | § § | |
| LEENA JAITLEY, D/B/A MANAGED OPTIONS TRADING and OPTIONS BY PROS, | § § § § | |
| Defendant, | § § | |
| and | § § | |
| TARABEN PATEL and OTA, LLC, | § § § | |
| Relief Defendants. | § § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is a Report and Recommendation

("Recommendation") filed by U.S. Magistrate Judge Mark Lane on November 26,

2024, recommending that the Court **GRANT** Plaintiff Securities and Exchange

Commission's ("Commission") Motion for Final Judgment and Remedies Against

Defendant Jaitley (Dkt. # 79).  (Dkt. # 83.)  The Court finds this matter suitable for

disposition without a hearing.  After reviewing the Recommendation and the

1

information contained in the record, the Court **ADOPTS** the Recommendation and

**GRANTS** the Commission's Motion.  (Dkt. # 79.)

BACKGROUND

On September 20, 2021, Plaintiff Securities and Exchange

Commission ("Plaintiff" or "SEC") filed this suit against Defendant Leena Jaitley

("Defendant" or "Jaitley"), and Relief Defendants Taraben Patel and OTA LLC.

(Dkt. # 1.)  The SEC alleged that Jaitley ran a stock options trading scheme and

defrauded clients. (Id.)  The SEC asserted four causes of action against Jaitley:

(1) violations of the Antifraud Provisions of the Securities Act Section 17(a) or 15

U.S.C. § 77q(a); (2) violations of Antifraud Provisions of the Exchange Act

Section 10(b) or 15 U.S.C. § 78j(b) and Rule 10b-5 or 17 C.F.R. § 240.10b-5; (3)

violations of the Antifraud Provisions of the Advisers Act Section 206(1) or

15 U.S.C. § 80b-6(1); and (4) violations of the Antifraud Provisions of the

Advisers Act Section 206(2) or 15 U.S.C. § 80b-6(2).  The SEC asserted one cause

of action—a claim for equitable relief—against the Relief Defendants for receipt of

ill-gotten gains obtained through Jaitley's fraudulent scheme.  The SEC sought (i)

permanent injunctive relief; (ii) disgorgement of allegedly ill-gotten gains; (iii)

accrued prejudgment interest on those gains; and (iv) civil monetary penalties.

On March 7, 2023, the SEC moved for partial summary judgment,

specifically as to liability on the four securities fraud claims.  (Dkt. # 50 at 1, 8.)

2

Jaitley opposed the SEC's Motion.  (Dkt. # 56.)  On March 7, 2023, OTA LLC

("OTA") filed a Motion to Set Aside Clerk's Entry of Default.  (Dkt. # 52.)  The

SEC opposed OTA's Motion on March 21, 2023.  (Dkt. # 55.)

      The Motion for Partial Summary Judgement was referred to U.S.

Magistrate Judge Mark Lane on May 11, 2023.  The Motion to Set Aside Clerk's

Entry of Default was referred to Judge Lane on April 3, 2023.  Judge Lane issued

his Report and Recommendation regarding both Motions on November 13, 2023.

(Dkt. # 69.)  This Court granted both motions (Dkts. ## 50, 52) by adopting the

Magistrate Judge's Report and Recommendation (Dkt. # 69).  (Dkt. # 70.)  In

granting summary judgment against Jaitley, this Court found Jaitley liable for all

four securities fraud claims, finding no genuine issue of material fact. (Dkt. # 70 at

14.)

      As for Relief Defendants, on August 19, 2024, the Court granted

Plaintiff's Unopposed Motion to Dismiss Relief Defendants and Terminate Trial

Date (Dkt. # 78).  (Dkt. # 80.)  Relief Defendants were dismissed under Rule

41(a)(2) for the sake of expediency as all four claims against Defendant Jaitley had

been resolved and the Commission sought to avoid the need for a trial.  (See Dkt.

# 78 ¶¶ 2, 4) ("[T]he Court granted the SEC's Motion for Partial Summary

Judgment against Defendant Jaitley finding Jaitley liable on all counts with which

she was charged. ECF No. 70. As a result, only the SEC's claim against the Relief

Defendants remains to be decided at trial.").  The motion was unopposed, and the Relief Defendants were dismissed from the case.  (Dkt. # 78.) Thus, determining the remedies to which Plaintiff is entitled against Defendant Jaitley is the only remaining task at issue in this case.

The Commission has now filed a Motion for Final Judgment and Remedies Against Defendant Jaitley. (Dkt. # 79.)  The Commission requests: (1) an order finding Defendant Jaitley liable to pay disgorgement of fraudulently obtained net profits and prejudgment interest ("PJI"); (2) civil penalties; (3) an order permanently enjoining Jaitley from violating the antifraud provisions; and (4) the entry of the proposed final judgments attached to its motion as pertains to Jaitley. The Motion for Final Judgment and Remedies was referred to Magistrate Judge Lane on August 19, 2024.

## DISCUSSION

Where, as here, none of the parties objected to the Magistrate Judge's findings, the Court reviews the Report for clear error.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).  After careful consideration, the Court adopts the Magistrate Judge's Report in full.

The Magistrate Judge made detailed findings of fact and conclusions of law, which this Court adopts, upon a finding that they are neither clearly erroneous nor contrary to law.

A. <u>Findings of Fact</u>

The Magistrate Judge found that from August 2018 through September 2021, Defendant Jaitley, working possibly with the assistance of her father (now deceased), caused fifteen individuals to lose at least $800,000 in principal and approximately $1.48 million total (inclusive of fees) by retaining Jaitley's services.  (Dkt. # 69 at 1–3.)  Jaitley carried out this scheme doing business as Options By Pros and Managed Options Trading (collectively, "OBP/MOT") through which she misrepresented herself as an options trader working with former Goldman Sachs and JP Morgan traders out of offices in New York.  (<u>Id.</u> at 2, 11–12; Dkt. # 70 at 5, 7.)

The Magistrate Judge further found that Jaitley represented to clients that: (a) she and her father had decades of financial services experience at Goldman Sachs; (b) OBP/MOT used proprietary trading techniques; (c) OBP/MOT employed numerous traders who formerly worked at Goldman Sachs and JP Morgan; (d) the company's offices were located in the MetLife Building in New York; and (e) the company used "stops" to limit the risk of loss.  (Dkt. # 70 at 7; Dkt. # 51, Ex. P-31, Client 1 Decl. ¶¶ 11, 16; Dkt. # 51, Ex. P-32, Client 2 Decl. ¶ 36; Dkt. 79-4 at 56.) The Magistrate Judge found that all of those statements are false.  (Dkt. 70, at 7.)  The Magistrate Judge also found that Jaitley used fake

names and telephone numbers to communicate with investors, further underscoring her deceptive intent.  Id.

Finally, the Magistrate Judge found that Jaitley received $672,833 in net profits from investors in money and goods.  (Dkt. # 79-12, Ex. P-85, Furlano Decl. ¶ 13.)  Jaitley provided no explanation for why she could be legitimately entitled to the money and goods. (See, e.g., Dkt. # 79-3. 6.)  Investor money was not used for the stated purpose of the investment.  Instead, the Magistrate Judge found that the money went to bank accounts shown to be in Jaitley's control while the investors suffered catastrophic losses from Jaitley's trades.  (Dkt. # 79 at 6–7; Dkt. # 79-12, Ex. P-85, Furlano Decl. ¶ 6.)  Three of the four bank accounts were opened in Jaitley's father's name, although he denied opening any bank accounts associated with OBP/MOT or receiving any money from OBP/MOT clients. (Dkt.  20 ¶ 75–76.)

B. Disgorgement and Prejudgment Interest

The Magistrate Judge correctly concluded that disgorgement of $672,833 in fraudulently obtained net profits is warranted under 15 U.S.C. § 78u(d)(7).  Disgorgement serves the equitable purpose of returning ill-gotten gains to investors, and the Magistrate Judge's calculation of the amount as a reasonable approximation of net profits is supported by the record.

A "disgorgement award" is permissible equitable relief if it "does not exceed a wrongdoer's net profits and is awarded for victims." *Liu v. SEC,* 591 U.S. 71, 75 (2020).  "The SEC has the burden to reasonably approximate the defendant's 'unjust enrichment' attributable to the securities violation," which "may not include 'income earned on ill-gotten profits'" . . . "but it may include interest."  SEC v. Hallam, 42 F.4th 316, 341 (5th Cir. 2022) (quoting SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978)); see also SEC v. Fowler, 6 F.4th 255, 267 (2d Cir. 2021).  Once the SEC establishes a reasonable approximation of the defendant's ill-gotten gains, the burden shifts to the defendant, who "must prove that the requested amount is 'unreasonable.'"  Hallam, 42 F.4th at 341 (quoting SEC v. Halek, 537 F. App'x 576, 581 (5th Cir. 2013)).

Here, the SEC, through declarations, has provided a reasonable approximation of Jaitley's ill-gotten gains from the fraud the Court previously found Jaitley committed: $672,833 in net profits in money and goods.  (See Dkt. # 79-12 at ¶ 12.)  Jaitley, who asserted her Fifth Amendment right against self-incrimination during discovery, has refused to provide information about her personal bank accounts and has provided no explanation for why she would be entitled to the money and goods she received from victims or why the money does not constitute net profits from her fraudulent conduct.  (See, e.g., Dkt. # 79-3.)  On this record, the Commission is entitled to an adverse inference based on Jaitley's

7

assertion of her Fifth Amendment privilege.  See Hinojosa v. Butler, 547 F.3d 285, 291 (5th Cir. 2008) ("it is well-settled that 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'") (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)); SEC v. Milles, 2022 WL 206808, at *5 (W.D. Tex. Jan. 24, 2022)("[c]ourts have drawn an adverse inference based on a party's invocation of the privilege in a civil case, especially where other evidence demonstrated that party's liability.") (citations omitted).  The Court therefore finds Jaitley liable to the Commission for disgorgement of profits in the amount of $672,833.

The Magistrate Judge also recommended the Court grant the Commission's request for prejudgment interest, calculated using the IRS underpayment rate under 26 U.S.C. § 6621(a)(2).  This reflects the benefit Jaitley derived from withholding investor funds over time.  The Court agrees that requiring prejudgment interest is equitable and appropriate in this case and therefore finds Jaitley liable to the Commission for prejudgment interest in the amount of $158,835.

C.  Third-Tier Civil Penalties

The Magistrate Judge recommended third-tier civil penalties based on Jaitley's fraudulent conduct and deceit, which resulted in substantial losses to

investors exceeding $800,000.  (Dkt. # 83 at 5.)  Under 15 U.S.C. §§ 77t(d),

78u(d)(3), and 80b-9(e)(2), third-tier penalties are appropriate when violations

involve fraud and result in significant harm to investors.  The Court agrees with the

Magistrate Judge's reasoning that civil penalties are necessary to punish individual

violators like Jaitley and to deter future violations.

      Under these statutes, the court may impose a civil penalty against a

defendant not exceeding the greater of $230,464 for a natural person per violation

or the gross amount of pecuniary gain to such defendant because of the violation.

The Magistrate Judge recommended that the Court impose a civil penalty equal to

Defendant's pecuniary gain in the amount of $672,833.

      While the statutory tier determines the maximum penalty allowed per

violation, the actual amount of the penalty to be imposed is left to the Court's

discretion.  See, e.g., SEC v. Voight, 2021 WL 5181062, at *14 (citations omitted).

In determining the appropriate penalty, the court considers: (1) the egregiousness

of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether

the defendant's conduct created substantial losses or the risk of substantial losses

to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5)

whether the defendant has admitted wrongdoing; and (6) whether the penalty

should be reduced due to the defendant's demonstrated current and future financial

9

condition.  <u>SEC v. Life Partners Holdings, Inc.</u>, 71 F. Supp. 3d 615, 623 (W.D. Tex. 2014).

The Court agrees with the Magistrate Judge's recommendation to impose a civil penalty equal to Jaitley's gross pecuniary gain of $672,833.  As the Court found in its Order granting summary judgment, Jaitley's conduct was egregious and demonstrated scienter.  (<u>See</u> Dkt. # 70 at 7) ("Despite knowing that neither she nor Mr. Patel had decades of financial services experience at Goldman Sachs, she made such a representation. . . . And Jaitley's use of fake names and blocked phone numbers underscores that Jaitley intended to deceive investors.)  Further, Jaitley's false claims lead to victims sustaining substantial losses, in excess of $800,000 in principal.  Jaitley's fraudulent conduct was recurrent, given she operated OBP/MOT for over two years, defrauding at least fifteen victims. (Dkt. # 79 at 13.)  Finally, Jaitley has failed to admit wrongdoing, insisting her deceased father was responsible for the fraudulent operations of OBP/MOT. (<u>Id.</u> at 14.)  The Court is unable to assess the sixth factor, ability to pay, as Jaitley asserted her Fifth Amendment privilege and declined to provide information about her bank accounts. (<u>See</u> Dkt. # 79 at 15.)  However, based on the foregoing five factors, the Court finds that a third-tier civil penalty is appropriate here, in the amount of Jaitley's gross pecuniary gain of $672,833, despite Jaitley's argument that she is a

first-time offender and should therefore be subject to a less severe penalty tier.

(See Dkt. # 81 at 7.)[1]

D. Monetary Relief

In sum, the Magistrate Judge found, and the Court agrees, that the

following monetary relief is appropriate in this case: disgorgement of $672,833,

representing net profits; together with prejudgment interest thereon in the amount

of $158,835; and a civil penalty in the amount of $672,833, pursuant to the

Securities Act, 15 U.S.C. §77t(d), the Exchange Act, 15 U.S.C. §78u(d)(3), and the

Advisers Act, 15 U.S.C. § 80b-9(e)(2).  Jaitley shall satisfy this obligation by

paying a total of $1,504,501 to the Securities and Exchange Commission within 30

days after entry of Final Judgment.

The Court determines that Judge Lane's conclusions and

recommendations are neither clearly erroneous nor contrary to law.  The Court

adopts Judge Lane's recommendation and grants the Commission's Motion for

Final Judgment and Remedies Against Defendant Jaitley.  (Dkt. # 79.)

---

[1] The Court notes that even under the cap for first-tier violations, a penalty up to
the defendant's gross pecuniary gain is allowed.  See 15 U.S.C. §§ 77t(d)(2),
78u(d)(3)(B), 80b-9(e)(2)(B).

E.  Equitable Relief

The Magistrate Judge recommended that the Court enter the Proposed Order and Final Judgment (Dkt. # 79-1), which includes equitable relief permanently enjoining Jaitley from violating the antifraud provisions.

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)] authorize the Commission to seek injunctive relief when a person or entity is engaged in or is about to engage in conduct constituting a violation of securities laws.  "The critical question [for the court] in issuing the injunction . . . is whether [the] defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future."  See Blatt, 583 F.2d at 1334.  Courts routinely permanently enjoin defendants who have violated securities laws from further violations of the same statutes and rules.  See, e.g., Life Partners Holdings, Inc., 854 F.3d at 784.

Courts consider many of the same factors when imposing permanent injunctions as when considering penalties, including the (1) egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) degree of scienter; and (4) sincerity of the defendant's recognition of her transgression.  SEC v. Gann, 565 F.3d 932, 940 (5th Cir. 2009).

As described above, the egregiousness of Jaitley's actions, the degree of her scienter, the recurrent nature of her conduct, and her failure to admit wrongdoing, all weigh in favor of the Court permanently enjoining her from violating the Antifraud Provisions.  Accordingly, the Court adopts the Magistrate Juge's recommendation that the Court permanently enjoin Jaitley from violating the antifraud provisions.

CONCLUSION

For the reasons given, the Court **ADOPTS** Magistrate Judge Mark Lane's Report and Recommendation (Dkt. # 83) as the opinion of the Court and **GRANTS** the SEC's Motion for Final Judgment and Remedies Against Defendant Jaitley.  (Dkt. # 79.)  The Court will enter Final Judgment in a separate Order.

**IT IS ORDERED** that Defendant is liable for disgorgement of $672,833, representing net profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $158,835, and a civil penalty in the amount of $672,833 pursuant to the Securities Act, 15 U.S.C. §77t(d), the Exchange Act, 15 U.S.C. §78u(d)(3), and the Advisers Act, 15 U.S.C. § 80b-9(e)(2).  Defendant shall satisfy this obligation by paying $1,504,501 to the Securities and Exchange Commission within 30 days after entry of Final Judgment in this case.

**THE CLERK IS INSTRUCTED TO CLOSE THE CASE.**

13

**IT IS SO ORDERED**.

**DATED:** Austin, Texas, December 12, 2024.

_____
Hon. David Alan Ezra
Senior U.S. District Judge